Good morning, counsel. Please proceed. Good morning, Your Honors. Antonio Zaldana for the petitioner OLIVAS-LARA. The government repeatedly, in their brief, repeat that the streamlining regulations have been upheld by this court. The petitioner's position is not, in a sense, challenging the streamlining regulations. We do accept and concede that this court has found them to be acceptable procedures in order to expedite cases at the Board of Immigration Appeals level. What the petitioner is, in fact, bringing into issue is the fact that his particular case brought numerous issues that had not been addressed either by this court or by the Board of Immigration Appeals. By way of example, the petitioner, in this case, cited to the Villarreal case, which addressed one of the issues of petitioner's brief, whether or not a visa can be reused. That particular case was decided after this hearing. So doesn't that make it moot? I mean, if the decision came out the same way anyway, what's the harm? It makes it moot, in a sense, as to that particular issue. But I use that particular issue as an example in my brief. There are other issues, which are also issues of first impression, that would have required the board member to transfer it over to a three-member panel, which the board member did not do. Do we have jurisdiction to review the decision of a single board member regarding whether or not to assign the case to a three-member panel? Do we have jurisdiction over that? Well, Your Honor, that hasn't been addressed in any particular case. But I would submit that the court does have jurisdiction to review that, especially when the board member doesn't articulate in his or her opinion what that board member considered in doing, whether to keep it himself or herself to decide it, or whether or not to transfer it to a three-member panel. Wouldn't that be a discretionary decision over which we would have no jurisdiction? It would be a discretionary decision. But if it affects the petitioner in a way that his due process rights would be violated, for example, by statute, an alien in an immigration proceeding has the right to appeal his case to the Board of Immigration Appeals. And when that petitioner reaches that administrative agency, he obviously has a right to a full and fair hearing. How can he have a right to a full and fair hearing if the Board of Immigration Appeals is not even following the regulations that require it either to give it to a three-member panel or to allow summary affirmance under the streamlining regulations? Did you make a due process violation argument in your brief on this issue? On that particular issue, there is no due process violation argument. So it's either discretionary or not. If it's discretionary, we don't have jurisdiction. If it's not discretionary, we do have jurisdiction. Well, with the REAL ID Act, Your Honor, if there's a legal question, the court has jurisdiction. What's the legal question? Well, the legal question is whether, for one, whether the BIA followed its own regulations, whether the administrative agency followed their own regulations. The court can look at that without getting into a discretionary or non-discretionary. What regulation wouldn't have been followed because the option is given to either address it or assign it to a, address the case or assign it to a three-member panel. So what regulation was violated? Well, the regulation that was, well, the regulations provide for, if there are certain factors and your case fits within one of those factors, then it has to be assigned to a three-member panel. Is that what it says, must be? It doesn't use the language must be, but it indicates if, I don't remember exactly the language that it states, but if it's a guideline than a requirement. Not necessarily. Well, what's the language? Well, it's kind of by, by default almost. And if the regulations start off that a single board member may hear a case, but if it falls within any of these categories, then a three-member panel may hear the case. They hear the case. Well, I don't, I'm looking for something that's, that's mandatory. I'm asking you, you know, if there's mandatory language in here. I didn't see it, but I could have missed it. It's not necessarily mandatory language, Your Honor, and I can't find it right now, but it, it, it does suggest, a reading of it suggests that if it falls within one of those categories, then a three-member panel has to review it. It doesn't, it doesn't use the word shall. According to the mandatory, shall has been changed to may, to avoid this possibility. Gives discretion to refer cases to the three-member panel if appropriate. This is from the Procedural Forms to Improve Case Management in 67 Fed Reg, August 26, 2002. Well, Your Honor, under Subsection E, the regulation reads, unless a case meets the six of this section, all cases shall be assigned. There's no shall, and they deliberately didn't use shall is what they tell us. Well, it states, unless a case meets the standard, so that indicates that. It says, unless the case meets the standard for a three, for a three-member, it shall be assigned to a one-member. Isn't that what it says? That's what it says, and, and at that point, the board member is required to look at that And the Section E6 says, cases may only be assigned for review by a three-member panel if the case presents one of these circumstances. May only. I'm not sure if that may, Your Honor, is being used as, it's generally used in other statutes to distinguish it with the word shall. Well, INS, they tell us that that's why they did it. They explained the rule change and said they did it. It was not the department's intent that this language might lead to judicial enforcement of three-member panel review. Accordingly, the mandatory shall has been changed to may only to avoid this possibility. So the INS tells us why the rule was changed. They wanted it to be discretionary and not mandatory. I, I do want to make another, another point, Your Honor. If, if in fact a board, a single board member decides to issue a decision on a particular case under E5, that board member can do it in two ways. The first way is by issue, issuing a summary decision without opinion. And the second way is by issuing a brief order affirming, modifying, or remanding the decision. In this case, the single board member addressed all the issues in a quite lengthy opinion. And in reading that section together with the other sections, the issues that this petition presented do not, they, they would not allow a single board member to decide this case where that board member, by regulation, is limited only to a brief order. So if you read those two sections together, that board member, although the regulation in one portion of it uses the word may, would have required that board member to send the case to a three-member panel. But even if you're right, there's still no prejudice because the BIA later decided the issue against you. I do understand that, Your Honor. But if it's, if it's contrary to law, that order is nullified. But I gave, I mentioned that case by way of example. It's not dispositive. That's another issue. You only, you only gave us this status based on a visa petition argument. You gave us no other arguments. That's the one you identified in your brief. That's the one I identified by way of example. But the brief... Now you're changing your... I'm not necessarily changing it. The brief addresses numerous other issues that are a first impression. Why don't you address one of your other arguments? We understand your argument on this point. I will. Thank you, Your Honor. The next argument involves jurisdiction. Whether or not Olivas' race judicata attack can be addressed or considered by this court. And the government makes an argument that an immigration judge can, under the regulations, decide whether to reopen or reconsider his or her own case sua sponte. And again, I have the question whether or not we have jurisdiction to examine the sua sponte reconsideration of a prior decision. What jurisdiction do we have to review that? Well, the case is indicated that the court doesn't have jurisdiction to review that discretionary power. It's sua sponte. Because usually if there's sua sponte action taken, we don't have jurisdiction to review it. Right. But my point is, the court doesn't even have to get there. The first question is whether race judicata applies or not in immigration proceedings. That we all know that it does. There's cases that say that it does. In this case, when the immigration judge decided in the petitioner's favor, that became a final decision. Because at that point in time, the petitioner appealed the case to the BIA, the BIA remanded the case back to the immigration judge. Not as to the issues of... Remanded the entire case back, right? Well, it happened twice. The first time, the immigration judge found in the petitioner's favor as to the California Penal Code Section 211 case. Then it got sent to the BIA on petitioner's appeal. Then it got sent back to the immigration judge for the immigration judge to issue an oral or written decision because the petitioner had not admitted that he was removable from the United States. Now, when that immigration judge made that decision as to the 211 offense, our argument is that that became race judicata and it could not be revisited in later proceedings. So if the court accepts the argument that that's race judicata, that's where it ends. The court doesn't need to get into whether or not her subsequent decision was sua sponte or not, or was it a reconsideration or anything like that. So we just need to decide whether or not when a case is remanded to the IJ, whether or not it's final. If the case is remanded, how can it be final? Well, it wasn't remanded as to that point. It was remanded specifically for the judge to issue an oral or written decision because the alien or the petitioner in this case had not admitted removability. That was the only issue it was remanded back for. What was the language, the remand language? The remand language is very close to what I just stated and the I'm having a difficult time locating it, Your Honor. Maybe you can do it on rebuttal because your time is dwindling. Okay. And then the next issue is whether Mr. Olivas preserved the issue of whether his 2-11 offense would be a disqualifying offense or make him deportable because it was committed within five years after he was admitted. I have the language. It says the BIA remanded to the IJ for the preparation of an appropriate written or oral decision. That's what the language said. That's all that it states and it doesn't address. No limitation, though. No limitation. It said for preparation of an appropriate written or oral decision. That's a pretty wide open remand. And plus the BIA says this is perfectly appropriate. Well... Absent some applicable rule or statute to the contrary, courts possess inherent authority to reconsider their own orders before they become final. In the context of removal proceedings, this general notion has been made explicit, stating that talking about a regulation, H.C.F.R. 1003.23b1, an immigration judge may upon his or her own motion at any time reopen or reconsider any case in which he or she has made a decision unless jurisdiction is vested with the board. Well, the problem I have with this case is that the judge initially made that decision right after proceedings were initiated. It goes up to the BIA. It comes back. Then the immigration judge makes that same decision all over again. And during a period of seven years from the time that the immigration judge made the decision that the 211 offense wasn't a removable offense or wasn't a CIMT committed within five years, seven years later, the immigration court says, oh, I changed my mind. No, no. The court didn't say I changed my mind. The court said I misread a statute. People ask us to send things back all the time. And sometimes when they go back, they don't like what happens. Yeah. My point is that it took seven years. And with each time that or each time, at least the last time when the immigration court agreed with the petitioner that the offense, the 211 offense, was not a deportable offense because it had not been committed within the five years, it shouldn't take seven years for an immigration judge to decide that. And when the judge did decide in petitioner's favor, the immigration judge specifically asked the government, do you have any objections? The government said, they didn't say exactly no. That's all well and good, except we read the regs that says a sui spani, you can at any time before it becomes final reopen it. And that's what happened. You're saying that reg is a due process violation? It would be if the petitioner is open. Well, you didn't make that argument and it's not exhausted. Boom, boom. Well, the argument that I did make involves race judicata. My argument is that if the judge made that decision, he or she has to live that decision and the petitioner should not be penalized seven years down the line. The other issues I, actually I need to address, the reuse of a visa petition. Now before the most recent BIA case relating to the reuse of the visa petition states that once a visa petition is used, an alien can no longer use the petition. They also make reference to an older case where the alien in that case had abandoned his lawful permanent residency and then later sought to use that same visa petition to reenter the United States legally. The name of that case is matter of hairy bailing builders. And that's the case that the Board of Immigration Appeals in its decision cited in support of the proposition that a visa petition cannot be reused. That case is distinguishable from Mr. Olivas' case simply because Mr. Olivas never abandoned his lawful permanent residency. He never left the country. He never gave it up. He's always been a lawful permanent resident but for the fact that he eventually got put in proceedings and lost it. So that case is distinguishable from the case that's cited in the decision the BIA made in Mr. Olivas' case. Additionally, the BIA in Mr. Olivas' case reasoned that an alien should not be allowed to reuse an existing visa petition because somehow that alien would use up a visa petition that would otherwise be available to another alien who's applied for a petition. But since petitioner is requested to use the same visa petition, that petitioner, that alien is not taking away that visa from somebody else. That's also applied. But that alien is using the same visa that already belongs to him or her. And under those circumstances, that same visa petition can be used to adjust an existing lawful permanent resident. And moving along with the issues as to the 212H waiver, the BIA, along with the immigration judge, indicated that the petitioner had not accrued the requisite seven years of continuous residence. And this court has repeatedly held that, especially with the 212C case, Lipe Guitron, that a parent's lawful domicile should be imputed to the minor child. And later in a case entitled Cuevas-Gaspar, which this court issued, it also held that the seven years of lawful residence as it related to the cancellation of removal could also be imputed toward a minor child if his parents were lawful permanent residents. Under the 212H statute, we essentially have the same language, and that language should also be imputed to the child. Because in this particular case, the petitioner's parents were permanent residents long before he became a permanent resident. He was already in the United States. Counsel, you've exceeded your time. We'll give you one minute for rebuttal. Thank you, Your Honor. Thank you. May it please the Court, John O'Quinn for the Government. The BIA's order of removal, based on its determination that petitioner was not eligible for discretionary relief, should be affirmed. This case presents three issues, each of which should be decided for the Government. First, the Board properly employed a single-member panel to review the IJ decision. Second, the Board correctly determined that petitioner's conviction for armed robbery was a crime involving moral turpitude committed within five years of his admission as a permanent lawful resident, and rejudicata does not bar that determination. This conviction, of course, renders petitioner ineligible for 212C. Was that issue raised before the BIA? The merits of that issue were not, Your Honor. The petitioner raised the rejudicata argument, but the petitioner did not reach the merits of the robbery conviction. So we don't need to address that. Exactly. So the Court doesn't even have jurisdiction on the merits of that. So I'm not sure that I agree that the documents were sufficient to prove that. I'm happy to discuss that if the Court would find it helpful, but again, I think under 1252D, the Court wouldn't have jurisdiction to reach that issue because it wasn't exhausted. Right. And then the third issue that's presented in this case is that, of course, the Board properly found that petitioner was ineligible for 212H relief, and it did so for three independent reasons. A, that he had no valid visa petition to permit the immediate adjustment of status. B, his drug-related aggravated felony precluded 212H relief. And C, he failed to accrue the seven years of lawful residence required to be eligible under 212H. Well, what about the case law that says that a minor's residence is imputed to, the parent's residence is imputed to a minor? What about that case authority? Well, fair enough, Your Honor, and let me just say a quick word before I get to that. Of course, if the Court decides that there was no immigrant visa immediately available to him, or the Court decides that the drug-related aggravated felony prevented 212H relief, then the Court need not even reach this issue. Right. But turning to that issue, this case is, unlike Lepe-Guitron, 212C, which has since been repealed, involved two things. First, it involved a child who had lawfully entered the country and had been always legally within the country, and that was in this Court's Lepe-Guitron decision at 16F3rd at 1024. And second, of course, 212C. Well, how's that different from this case? Are you saying that. . . that he illegally entered the country twice? With his parents? His parents. . . I don't know whether his parents were lawfully in the country at the time that he entered the country. They subsequently became permanent residents and at that time became lawfully admitted. Now, Petitioner is trying to basically bootstrap additional time based on the time that his parents were lawfully admitted, but he himself had not yet been lawfully admitted. But the key difference between this case and Lepe-Guitron is, first of all, that case involved the issue of domicile, a common law concept on which there's been a lot of ink spilled over the years, and the Court, in that case, looked to the common law concept. Here, of course, the language is quite different. It doesn't talk about domicile. It asks how long the Petitioner himself, quote, lawfully resided. That's the term that's used in 212A here, lawfully resided. And I would submit that that, therefore, distinguishes this case both from Lepe-Guitron. . . Isn't that a distinction without a difference, though? Because residence is really not as stringent as domicile. Well, Your Honor, if it were a distinction without a difference, I'm not sure that we'd be having the debate in Congress that's going on right now about immigration reform and whether or not family members should be able to obtain residence with other family members. I mean, that is the issue. But residence and domicile, you're trying to make that distinction between, you know, whether or not someone imputing domicile is different from imputing residence. And I'm not sure that that's a distinction that should be recognized. That's all I'm saying. I understand that there are some similarities, Your Honor, and I understand that there's a natural, perhaps, desire to say that if it applies in one context, it applies in the other. But, of course, Congress did use a very different term when 212H was enacted. This was at the same time that 212C was repealed. It was all part of IARA in 1996. And the term that Congress used was lawfully resided. And the issue, therefore, is not whether or not he resided. The issue is whether or not he was here lawfully. And he plainly was not. In Cuevas-Gaspar, we said the difference between domicile and residence is not so great as to be dispositive. I recognize that there are very bright lines that would have to be drawn here, Your Honor. This court in Garcia-Quintero, 455 F. 3rd, 1006, I think read Cuevas-Gaspar as simply rejecting the BIA's definition of admitted as requiring inspection and authorization. But, again, I would come back to the fact that the court need not even decide this issue because you could either decide that there was no immigrant visa that was immediately available to him or the fact that he was an aggravated felon and, therefore, was ineligible for 212H relief under the statute. So let me say a few words about both of those issues. With respect to the lack of availability of an immigrant visa, the regulations that were applicable at the time that he filed his petition and at the time that that petition was initially granted were very clear. They said that any petition approved, quote, ceases to convey a priority date or visa classification and cannot be restored after it has been used by its beneficiary. So I think that would resolve this case in and of itself. The board, of course, has recognized that the same principle remains implicit in the current regulations. And, indeed, this is a very sensible position because if it were otherwise, then criminal aliens would simply get a second bite at the apple. And family petitions should not serve as get-out-of-jail-free cards so that you can use it again and again and again. And contrary to Petitioner's assertion here during the argument, were he to be allowed to reuse his visa petition, we would submit that the upshot of that is it would cost someone else a space. This is a zero-sum game. If you look at INA Section 245B and also at CFR 1245.2A52, if he gets a spot, it's going to take somebody else a spot because there's a numerical limitation that applies per year. And it doesn't make any difference that his parents have now become citizens because at the time of the application, the application he's relying on, his parents were not citizens. So we would submit that there simply was no immigrant visa available to him and that alone precludes the availability of 212H relief. The other factor preventing 212H relief is his aggravated felony for his drug offense. Now, as this court held in Molina, a 212C waiver, which might potentially be applicable to the drug-related felony if that were the only felony here. I mean, again, because of his robbery conviction, which postdates the effective date of IIRA, he's not eligible for 212C relief at all. So what Petitioner's trying to do is say, apply 212C as to one conviction, apply 212H as to the other. And I would note that there's no case that supports such bootstrapping, and indeed this is actually like the Third Circuit's decision in Rodriguez-Munoz, which found that a conviction, that simply because a conviction was waivable under 212C didn't mean that it could also be waived for purposes of a different statute. In that case, it was 240A. In our case, it's 212H. And indeed, I don't think there's anything in the Board's regulations that suggests anything to the contrary. The Board's regulations simply note that you can apply for multiple forms of relief simultaneously, but it doesn't mean that you're going to qualify for all of those forms of relief. In any event, 212H was amended in 1996 as part of IIRA and made retroactive to make any kind of reading like that of the regulations invalid, because 212H specifically was amended to make all aggravated felons ineligible for a waiver. So even if the drug conviction could be waived under 212C, 212H would still bar relief because of the ineligibility for the robbery. Is that your argument? Absolutely, Judge Rawlinson. That's exactly the case. Got it. I can speak to, if it would be helpful, I'm certainly happy to speak to the jurisdictional issues that Judge Rawlinson, you raised with respect to the robbery conviction and the issue with respect to res judicata and sua sponte, but I don't want to unnecessarily take up the Court's time. I think we understand those arguments sufficiently well. Okay. All right. Thank you, Counsel. If there are no further questions, we rest on our brief. Thank you. Thank you, Counsel. One minute for rebuttal. Thank you, Your Honor. I just want to address one of the jurisdictional issues in terms of exhaustion. Now, in the Ninth Circuit brief, I do raise that the immigration judge made specific references to a felony complaint and information in order to find that the robbery offense was committed on a certain date, i.e., within five years after the petitioner was admitted into the United States. That argument, as it was presented to this Court, was not presented in that manner to the BIA. Nonetheless, I ask this Court to consider that argument based upon the fact that it wasn't exactly raised like that at the immigration judge level, but what the petitioner did do at the IJ level was, when those charges were brought up, the petitioner would deny the charges. And he would put into issue, at least he put into issue, whether the 211 offense disqualified him for relief from deportation. That's a different issue than saying whether or not it was committed within five years of his admission, though. Yes, Your Honor. Well, there's two issues. The issue I'm addressing now is whether or not the documentation that the immigration judge used in making that finding, whether that documentation was sufficient. You don't even get there, because you didn't raise the issue. You didn't raise the issue of whether or not the robbery was committed within five years of the petitioner's admission. So it doesn't matter what the document said, because the issue was not sufficiently raised to the BIA. Well, my point is that it was raised when the petitioner denied the charges of removability, as it specifically related to the robbery offense at the immigration judge level. I understand your argument. So saying not guilty raises all possible issues. Not in a criminal context, but denying the charges in an immigration context does. But when you're going to the BIA, you're appealing certain issues, not before the IJ, which would maybe give you a little stronger argument. But when you go to the BIA, you're charged with raising the specific issues on appeal. Yes, and I do want to point out to one particular section of my notice of appeal at the BIA. The last sentence, it's certified administrative record, page 39, raises the issue. At least in my opinion. I'm hopeful the court would agree with me. But it does raise the issue, although it's not stated in the BIA brief. Briefs to the BIA are optional. They're not required when you do your notice of appeal. What does the issue say? What do you say when you say you raise that issue? Well, it's on page 39, Your Honor, it's the last sentence. Okay, I'll check it. All right, thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Trott, Rawlinson, King